**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:24-cv-4191 |
| | ) | |
| BAIRD & WARNER, INC., MARY | ) | |
| MASLANKA, and DAVID FREIFELD, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

For its Complaint for Declaratory Judgment against Defendants Baird & Warner, Inc. ("B&W"), Mary Maslanka ("Maslanka"), and David Freifeld ("Freifeld"), Plaintiff Federal Insurance Company ("Federal") states as follows.

NATURE OF THE CASE

1.     This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

2.     Plaintiff Federal seeks a declaration that the ForeFront Portfolio 3.0 Policy No. 8258-0755 (the "Policy"), a true and correct copy of which is attached as Exhibit 1, does not provide coverage in connection with the complaint against B&W captioned *Maslanka & Freifeld v. Baird & Warner, Inc., et al.*, No. 2024CH01108, filed in the Circuit Court of Cook County, Illinois, and subsequently removed to the United States District Court for the Northern District of Illinois, Case No. 24-cv-02399 (the "Underlying Complaint").

3.     A dispute exists as to whether Federal is obligated under the Policy to defend and/or indemnify B&W in connection with the Underlying Complaint. As a result of this dispute, there is an actual case or controversy between the parties.

PARTIES

4.     Federal is an Indiana corporation with its principal place of business in New Jersey.

5.     Upon information and belief, B&W is an Illinois corporation with its principal place of business in Illinois.

6.     Mary Maslanka is a resident and citizen of Illinois. By reason of Maslanka's assertions against B&W, she is a necessary party to this controversy, as she has a potential interest as to whether Federal has a duty to defend and/or indemnify B&W in connection with the Underlying Complaint.

7.     David Freifeld is a resident and citizen of Illinois. By reason of Freifeld's assertions against B&W, he is a necessary party to this controversy, as he has a potential interest as to whether Federal has a duty to defend and/or indemnify B&W in connection with the Underlying Complaint.

JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between (1) Federal and (2) B&W, Maslanka, and Freifeld, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Defendants because: B&W was sued in Cook County, Illinois with respect to alleged conduct of B&W in Illinois including the actions giving rise to the Underlying Complaint and the present insurance dispute; Maslanka and Freifeld are residents and citizens of Illinois who sold and/or purchased property in Illinois; and the

Underlying Complaint in this insurance dispute was filed in the Circuit Court of Cook County, Illinois and subsequently removed to this Court.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Underlying Complaint and insurance dispute occurred in this judicial district.

## FACTUAL BACKGROUND

### *The Underlying Complaint*

11.     On February 22, 2024, Maslanka and Freifeld filed a complaint, naming B&W as a defendant. A copy of the complaint, i.e., the "Underlying Complaint," is attached as Exhibit 2.

12.     The Underlying Complaint includes the following allegations.

    a.     Maslanka and Freifeld bring an action against B&W "for engaging in and facilitating a conspiracy that perpetuates anti-competitive measures in the real estate broker market in Illinois. [B&W] and its co-conspirators have adopted and implemented practices that keep real estate broker commissions artificially elevated, resulting in harm to both homebuyers and home sellers …." Ex. 2, ¶ 1.

    b.     B&W is a "member of the National Association of Realtors ('NAR'), a national trade association that provides advantages to its members, including access to primary Multiple Listing Services ('MLSs')" whereby "MLS is essentially a searchable database that serves as a marketplace for available properties." Ex. 2, ¶ 2. "Both the supply side and the demand side of the housing market depend on MLSs." Ex. 2, ¶ 6.

c.      "A substantial number of MLSs, including most large regional MLSs, require NAR membership for access to listings," and "[t]o be a member of NAR, real estate brokerage firms such as [B&W] must adhere to NAR's policies and guidelines, including those that apply to broker commissions." Ex. 2, ¶¶ 7-8.

d.      "NAR, [B&W], and their co-conspirators have created and implemented anti-competitive rules and policies related to broker commissions that have harmed consumers by, among other things, causing them to incur substantial additional costs in the form of inflated broker commissions and increased home prices." Ex. 2, ¶ 10.

e.      "[B&W] and its co-conspirators have adopted and followed NAR rules requiring every seller broker that lists a property on an MLS to make a blanket unilateral offer of compensation to all potential buyer brokers, even when the buyer-broker is working on behalf of the buyer, not the seller. This rule further requires that the offer provide the exact same compensation terms to all potential buyer brokers without regard to the buyer-broker's experience, the services they are providing to the buyer, or the financial arrangement they have made with the buyer." Ex. 2, ¶ 11. "This rule eliminates competition between buyer-agents with respect to their commission rate and the quality of their services. This lack of competition leads to inflated commission rates and home buyers receiving lower quality services. As a result, [this] Rule overcompensates buyer-agents at the expense of consumers." Ex. 2, ¶ 14.

f.   "The blanket unilateral offer of compensation rule creates tremendous pressure on sellers to offer a high commission to attract buyer brokers and deter them from 'steering' buyers away from their property and in favor of other properties offering higher buyer-broker commissions. The anticompetitive effects are further reinforced by other NAR rules, such as those which provide that after the seller has received purchase offers, the seller-broker is prohibited from attempting to unilaterally modify the buyer-broker commission that was offered on the MLS." Ex. 2, ¶ 12.

g.   "This anti-competitive behavior has also led to higher buyer-agent commission fees that otherwise would be subject to negotiation by homebuyers." Ex. 2, ¶ 13.

h.   "[T]he NAR ethics code also permitted and encouraged buyer-agents to advertise their services as 'free,' despite the fact that buyer-agents are actually paid their commission from the sale price of the home." Ex. 2, ¶ 16. "This anti-competitive behavior has led to homebuyers paying inflated fees for misrepresented 'free' broker services, overpaying for properties (whose purchase price necessarily incorporates the inflated commissions that cannot be reduced), and receiving overpriced and biased broker services." Ex. 2, ¶ 17.

i.   "[B&W]'s and its co-conspirators' advancement of the conspiracy alleged herein has markedly diminished the competitive practices in both the buyer-agent service sector and the seller-agent sector, negatively impacting homebuyers and home sellers. This conspiracy has empowered [B&W] and

5

other market participants to elevate and stabilize agent commissions at levels that are unnaturally high compared to those supported by a competitive market, thus harming homebuyers and home sellers." Ex. 2, ¶ 24.

j.       "Further reducing competition for buyer-agent and seller-agent services, NAR and its member brokers also restrict physical access to listed properties through the use of lockboxes that are available only to real estate brokers who are part of a NAR MLS. These brokers, with the consent of sellers, store keys to the homes listed for sale in lockboxes, enabling them to grant potential buyers access to the properties while ensuring their security." Ex. 2, ¶ 91. "NAR and NAR MLSs have implemented a set of rules … that limit lockbox access solely to real estate brokers who are members of NAR and subscribe to the NAR MLS. Brokers not affiliated with NAR are denied access to these lockboxes, preventing them from showing their clients homes listed for sale, which in turn diminishes competition in the realm of buyer-broker and seller-broker services." Ex. 2, ¶ 92.

13.    The Underlying Complaint includes counts for (I-II) Commission-Fixing Conspiracy in Violation of the Illinois Antitrust Act (on behalf of homebuyers and home sellers); (III) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; and (IV) Unjust Enrichment.  Ex. 2.

*The Policy*

14.     Federal issued the Policy to Baird & Warner Holding Company for the April 1, 2023 to April 1, 2024 Policy Period. Ex. 1.

15.     The Policy has a Directors & Officers and Entity Liability Coverage Part ("D&O/Entity Part"). Ex. 1.

16.     The D&O/Entity Part includes the follow Definitions, in pertinent part.

**Claim**[1] means . . . any . . . civil proceeding commenced by the service of a complaint . . . .

\*\*\*

**Insured** means any **Organization**[2] . . . .

\*\*\*

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including: . . . compensatory damages; . . . judgments . . . . . settlements; and . . . **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any: . . . amount uninsurable under the law pursuant to which this Coverage Part is construed . . . .

\*\*\*

**Professional Services** means services which are performed for others for a fee.

Ex. 1.

17.     The D&O/Entity Part includes the following Exclusions.

**(B)     EXCLUSIONS APPLICABLE TO INSURING CLAUSE (C), ENTITY LIABILITY COVERAGE ONLY**

[Federal] shall not be liable for **Loss** on account of any **Claim** against an **Organization:**

---

[1] Terms in bold are defined in the Policy.

[2] The General Terms and Conditions of the Policy define "Organization" as including any "Subsidiary," such as B&W. Ex. 1.

\*\*\*

(4)  <u>Antitrust</u>
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

\*\*\*

(6)  <u>Product Defect/Intellectual Property/Professional Services</u>
based upon, arising from or in consequence of …

(c) the rendering of, or failure to render, any **Professional Services** by an **Insured** .…

Ex. 1.

18.     The D&O/Entity Part includes a Real Estate and Financial/Lending E&O Exclusion Endorsement, Endorsement/Rider No. 16, which provides as follows:

In consideration of the premium charged, it is agreed that [Federal] shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from or in consequence of the rendering or failure to render any…(b) services or advice in connection with the **Insured's** business as a real estate broker or agent, multiple listing agent, real estate appraiser, title agent, title abstractor or searcher, escrow agent, real estate developer, real estate consultant, property manager, real estate inspector, or construction manager. Such services shall include, without limitation, the purchase, sale, rental, leasing or valuation of real property; or the arrangement of financing on real property.

Ex. 1.

*The Coverage Dispute*

19.     B&W submitted the Underlying Complaint to Federal for coverage under the Policy.

20.     Via letter dated May 21, 2024, Federal advised that the Antitrust, Real Estate E&O

8

and Professional Services Exclusions within the D&O/Entity Part of the Policy preclude coverage for the Underlying Complaint.

21.     Federal's letter also advised that additional Policy limitations, conditions, provisions, and other terms may apply to bar or limit coverage for the Underlying Complaint.

COUNT I
DECLARATORY JUDGMENT
(The Antitrust Exclusion Precludes Coverage For the Underlying Complaint.)

22.     Federal repeats and realleges the allegations contained in paragraphs 1-21 as if fully set forth herein.

23.     The Policy includes an Antitrust Exclusion, with respect to Insuring Clause (C), Entity Liability Coverage under the D&O/Entity Part, which bars coverage for **Loss** on account of any **Claim** against B&W "based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world." Ex. 1, D&O/Entity Part, Section V.(B)(4).

24.     The Underlying Complaint brings counts for (I-II) Commission-Fixing Conspiracy in Violation of the Illinois Antitrust Act (on behalf of homebuyers and home sellers); (III) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act by violation of the Illinois Antitrust Act; and (IV) Unjust Enrichment due to the "anti-competitive rules," which resulted in retaining benefits after setting and maintaining high commission rates and otherwise reducing competition in the real-estate broker market. Ex. 2, ¶¶ 123 – 160.

25.     The counts pertaining to "Commission-Fixing Conspiracy in Violation of the Illinois Antitrust Act" assert "[B&W] engaged in a continuing contract, combination, or conspiracy with respect to broker services provided in Illinois for the purpose and with the effect of fixing, controlling, or maintaining broker commissions," Ex. 2, ¶¶ 124, 133, "in violation of the Illinois Antitrust Act." Ex. 2, ¶ 124. The Underlying Complaint further alleges in these counts "[B&W's] conduct constitutes an unreasonable restraint of trade in or substantially affecting commerce in Illinois." Ex. 2, ¶ 133.

26.     The Underlying Complaint alleges "[B&W's] conspiracy has required sellers nationwide to pay buyer-brokers, to pay an inflated buyer-broker commission and an inflated total commission, and has restrained price competition among buyer-brokers." Ex. 2, ¶ 127.

27.     The Underlying Complaint also asserts "[B&W]'s agreement to uphold NAR rules, policies, and procedures related to buyer-agent compensation is *per se* unlawful under [the Illinois Antitrust Act] because [B&W] and its co-conspirators agreed to fix the commissions to be paid to buyer-agents." Ex. 2, ¶ 134.

28.     The Underlying Complaint alleges "[B&W] promulgated and enforced anti-competitive rules … in order to raise, set and maintain high commission rates and otherwise reduce competition in the market for buyer-agent and seller-broker services for its own gain." Ex. 2, ¶ 156.

29.     The Underlying Complaint also alleges B&W "engag[ed] in and facilitate[ed] a conspiracy that perpetuates anti-competitive measures in the real estate broker market in Illinois." Ex. 2, ¶ 1.

30.     The Underlying Complaint asserts "NAR, [B&W], and their co-conspirators have created and implemented anticompetitive rules and policies related to broker commissions that

10

have harmed consumers by, among other things, causing them to incur substantial additional costs in the form of inflated broker commissions and increased home prices." Ex. 2, ¶ 10.

31.     The Underlying Complaint further alleges "[B&W] and NAR have also implemented anti-competitive rules that directly harm homebuyers, including mandating that a set portion of the home sale price be allocated toward buyer-agent commissions[,]" which "eliminates competition between buyer-agents with respect to their commission rate[,]" and "leads to inflated commission rates." Ex. 2, ¶ 14. "These anticompetitive rules permit [B&W] and other NAR members to sustain broker fees at artificially high levels which would not exist in a competitive marketplace." Ex. 2, ¶ 19.

32.     Thus, the underlying lawsuit is a **Claim** based upon, arising from and/or in consequence of the conduct identified in the Policy's Antitrust Exclusion, and is thus barred from coverage by that exclusion.

33.     Therefore, Federal is entitled to a declaration that it does not have any duty to defend and/or indemnify B&W in connection with the Underlying Complaint because the Antitrust Exclusion bars coverage under the Policy.

COUNT II
DECLARATORY JUDGMENT
(The Real Estate E&O Exclusion and the Professional Services Exclusion Preclude
Coverage For the Underlying Complaint.)

34.     Federal repeats and realleges the allegations contained in paragraphs 1-33 as if fully set forth herein.

35.     The Policy includes a Real Estate and Financial/Lending E&O Exclusion Endorsement, which provides that there is no coverage under the D&O/Entity Part for **Loss** on account of any **Claim** "based upon, arising from or in consequence of the rendering or failure to render any :… (b) services or advice in the connection with the **Insured's** business as a real estate

11

broker or agent, multiple listing agent, real estate appraiser, title agent, title abstractor or searcher, escrow agent, real estate developer, real estate consultant, property manager, real estate inspector, or construction manager. Such services shall include, without limitation, the purchase, sale, rental, leasing or valuation of real property; or the arrangement of financing on real property." Ex. 1, D&O/Entity Part, Endorsement/Rider No. 16.

36.     The Underlying Complaint asserts that B&W is "the second largest residential real estate brokerage firm in Illinois by sales volume[,]" and is sued for "perpetuat[ing] anti-competitive measures in the real estate broker market in Illinois." Ex. 2, ¶ 1.

37.     The Policy includes a Professional Services Exclusion with respect to Insuring Clause (C), Entity Liability Coverage under the D&O/Entity Part, which bars coverage for **Loss** on account of any **Claim** against B&W "based upon, arising from or in consequence of the rendering of, or failure to render, any **Professional Services**, by an **Insured** . . . ." Ex. 1, D&O/Entity Part, Section V.(B)(6)(c).

38.     The Policy defines **Professional Services** as "services which are performed for others for a fee." Ex. 1, D&O/Entity Part, Section IV.

39.     Thus, the underlying lawsuit is a **Claim** based upon, arising from and/or in consequence of the rendering of and/or failure to render the professional services of real estate brokers/agents, and is thus barred from coverage by the Real Estate E&O Exclusion and the Professional Services Exclusion.

40.     Therefore, Federal is entitled to a declaration that it does not have any duty to defend and/or indemnify B&W in connection with the Underlying Complaint because the Real Estate E&O Exclusion and the Professional Services Exclusion bar coverage under the Policy.

COUNT III
DECLARATORY JUDGMENT
(The Definition of Loss Precludes Coverage For Uninsurable Loss.)

41.　　Federal repeats and realleges the allegations contained in paragraphs 1-40 as if fully set forth herein.

42.　　The Policy definition of **Loss** provides it does not include any "amount uninsurable under the law pursuant to which this Coverage Part is construed." Ex. 1, D&O/Entity Part, Section IV, amended by Endorsement/Rider Nos. 2 and 12.

43.　　The Underlying Complaint seeks treble damages, which are uninsurable under the law pursuant to which the Policy is construed. Thus, treble damages would not be covered.

44.　　The Underlying Complaint also seeks disgorgement and restitution of ill-gotten commissions and other benefits, which are uninsurable under the law pursuant to which the Policy is construed. Thus, disgorgement and restitution of amounts would not be covered.

45.　　Therefore, Federal is entitled to a declaration that it does not have any duty to indemnify B&W for any treble damages and disgorgement of ill-gotten commissions and other benefits in connection with the Underlying Complaint as such amounts do not constitute **Loss** under the Policy.

PRAYER FOR RELIEF

Federal Insurance Company requests that judgment be entered in its favor as follows:

A. Declaring that Federal does not have any duty under Policy No. 8258-0755 to defend B&W and/or to indemnify B&W in connection with the Underlying Complaint;

B. Awarding Federal its attorneys' fees and costs; and

C. For such other and further relief as the Court deems just and proper.

Dated: May 21, 2024

Respectfully submitted,

**WALKER WILCOX MATOUSEK LLP**

 /s/Alla Cherkassky Galati
Christopher A. Wadley (#6278651)
Alla Cherkassky Galati (#6316595)
cwadley@walkerwilcox.com
agalati@walkerwilcox.com
One North Franklin Street, Suite 3200
Chicago, IL 60606-3610
(312) 244-6700 Telephone

Attorneys for **FEDERAL INSURANCE COMPANY**